TIMOTHY J. YOO (SBN 155531)
MONICA Y. KIM (SBN 180139)
MICHELLE S. GRIMBERG (SBN 217327)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90064
Telephone:    (310) 229-1234
Facsimile:    (310) 229-1244

Attorneys for Plaintiff

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| SELIM AMERICA, INC., | Case No. 2:10-bk-45503-RN |
| Debtor. | |
| | Adv. No. _____ |
| SELIM AMERICA, INC., and SELIM TEXTILE, INC. | **COMPLAINT FOR:** |
| Plaintiff, | **DECLARATORY RELIEF REGARDING EXTENT, PRIORITY AND VALIDITY OF LIENS AND AMOUNTS OF CLAIMS;** |
| vs. | |
| HWASEUNG NETWORKS AMERICA, CORP., a New York corporation, AND DOES 1-20, | **DAMAGES FOR INTENTIONAL INTERFERENCE WITH CONTRACT, INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE AND NEGLIGENT INTERFERENCE WITH BUSINESS RELATIONSHIPS;** |
| Defendants. | **DAMAGES FOR WILLFUL AND INTENTIONAL VIOLATION OF THE AUTOMATIC STAY; AND** |
| | **PERMANENT INJUNCTION** |
| | Date:    [TO BE SET]<br>Time:    [TO BE SET]<br>Place:    Courtroom 1645<br>        255 E. Temple St.<br>        Los Angeles, CA |

Plaintiffs, Selim America, Inc., a New York corporation ("America") and Selim Textile,

Inc. ("Textile") (collectively, the "Debtor" or "Plaintiff"), for their complaint, alleges as follows:

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 151, 157, and 1334.

2.     This adversary proceeding is brought pursuant to Rule 7001, et seq. of the Federal Rules of Bankruptcy Procedure.

3.     Venue in this Court is proper pursuant to 28 U.S.C. Section 1409 as this adversary proceeding arises in and relates to a case under Title 11 that is pending in this District.

4.     This is a "core" proceeding as defined by 28 U.S.C. Sections 157(b)(2)(A), (B), (K), and (O).

**THE PARTIES**

5.     Plaintiff is the debtor and debtor in possession in the above-captioned Chapter 11 bankruptcy case.  Plaintiff is a New York corporation with its principal place of business located at 725 S. Figueroa St., Suite 3070, Los Angeles, CA.

6.     Plaintiff is informed and believe and based thereon alleges that Defendant, Hwaseung Networks America Corp. ("Hwaseung") is a corporation organized under the laws of New York with its principal place of business located at 485 Seventh Ave., Suite 309, New York, NY.

7.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendants, DOES 1-20, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a fictitiously named Defendant is, in some manner, responsible for the events and happenings herein referred to, either contractually or tortuously, and caused the damage to Plaintiff as alleged herein.  When Plaintiff ascertains the true names

and capacities of DOES 1-20, inclusive, Plaintiff shall seek leave of this Court to amend its Complaint by setting forth the same.

8.      Plaintiff is informed and believes, and upon such information and belief alleges, that at all times herein mentioned, Defendant and DOES 1-20, inclusive, were the agents, powers of attorney, assignees, employees, employers, representatives, servants, consultants, principles, of each of the defendants and each defendant has ratified, adopted, or approved the acts or omissions hereinafter set forth of the remaining defendants, when acting as principal, was negligent in the selection of hiring of each and every other defendant as an agent, employee, consultant and the like. Plaintiff is further informed and believes, and upon such information and belief alleges, that each of these fictitiously-named defendants is responsible in some manner for acts, omissions or indebtness herein alleged, and that said defendants are indebted to Plaintiff as hereinafter set forth.

## **GENERAL ALLEGATIONS**

9.      On August 23, 2010 (the "Petition Date"), America filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Following the Petition Date, America continues to operate its business and manage its affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

10.      On the Petition Date, a voluntary petition was also filed by the Debtor's affiliate, Textile. Textile also continues to operate its business and manage its affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

11.      Both America and Textile are owned solely by June Yong Kim ("Kim").

12.      Kim started the businesses of the Debtor in 2006. Generally, the Debtor is engaged in the businesses of importing various textile goods (e.g., yarns and fabrics) from foreign suppliers, and re-selling those goods to domestic customers. Textile, for its own account, is the

initial purchaser of the textile goods from the overseas suppliers. Textile then transacts with America whereby the goods are sold by Textile to America. America then sells the goods to its customers (thereby generating accounts receivable), and upon receipt of payments on the accounts receivable, pays its debts, including debts owed to its affiliate Textile. Textile, in turn, repays its debts to its own creditors. The Debtor has operated its business in this manner since 2006-2007.

13.    As of the Petition Date, America's books and records reflected that it owed Textile approximately $53,000,000 for unpaid goods.

14.    The Debtor's business does not actually require either of these parties to ever hold the textile goods. Rather, once the goods are purchased by Textile and shipped into the United States and clears U.S. customs, the goods are transferred to America, and held by a third party logistics company hired by the Debtor, which will drop ship the items directly to the Debtor's customers at the Debtor's direction. Through this mechanism of outsourcing all necessary logistics, among other things, the Debtor became very profitable.

15.    In or around July 2008, Textile began a business relationship with Defendant Hwaseung whereby Textile agreed to purchase textile goods from Hwaseung, a Korean textile company. The parties used a company known as Frontier Logistics Services ("Frontier") as the third party logistics company to receive and ship the goods from Hwaseung. Because Frontier actually shipped goods to the Debtor's customers at the direction of the Debtor, Frontier was provided confidential and proprietary customer and related information by the Debtor. Based on information and belief, Debtor alleges that Frontier does a substantial amount of business with Hwaseung as well.

16.    The business relationship between Hwaseung and Textile was successful for both parties, and Hwaseung sought ways to expand the relationship. In January 2010, Textile executed

a Promissory Note (the "Note") in favor of Hwaseung for the principal sum of $1,000,000.  A copy of the Note is attached hereto as Exhibit "A" and incorporated herein by reference as though set forth in full.

17.    The obligations under the Note were secured by that Security Agreement dated January 2010 pursuant to which **Selim Textile** granted to Hwaseung a security interest and lien upon the following:

"A.    All equipment, fixture, furniture, leasehold improvement, lease, stock, supply, inventory goods, contractual rights, chattel paper, trade name, trade good now and hereafter to be acquired by Selim Textiles, Inc. for the premises at 358 5th Ave., Suite 3021, New York, New York and wherever they may be located.

B.    All the outstanding shares of Selim Textiles Inc. held by June Yong Kim.

C.    All the Outstanding account receivables existing at the time of declaration of default by the Secured Party."

A copy of the Security Agreement is attached hereto as Exhibit "B" and incorporated herein by reference as though set forth in full.

18.    In addition to the Security Agreement, the parties executed that certain Assignment of Accounts Receivable of Selim Textiles, Inc. ("Assignment Agreement") which purports to grant, transfer, and assign to Hwaseung all right, title and interest of **Selim Textile** in and to all outstanding accounts receivable due to **Selim Textile** for the purpose of securing payment of all sums due by **Selim Textile** to Hwaseung under the Security Agreement.  A copy of the Assignment Agreement is attached hereto as Exhibit "C" and incorporated herein by reference as though set forth in full.

19.     While the Assignment Agreement is dated January 2009, the agreement also indicates that it secures payments due to Hwaseung and secured by the Security Agreement dated January 1, 2010.  Therefore, the date of the Assignment Agreement appears to be a mistake.

20.     Hwaseung purported to record a UCC financing statement with the Office of the Secretary of State of New York on May 26, 2009, <u>approximately six months before the Note and the Security Agreement were signed</u>.  A copy of this UCC financing statement is attached hereto as <u>Exhibit "D"</u> is attached hereto and incorporated herein by reference as though set forth in full.

21.     The description of the collateral purportedly covered by the UCC financing statement is very ***different*** from the description of the collateral set forth in the Security Agreement.  The UCC financing statement describes the collateral simply as:

> "All equipment, fixture, furniture, leasehold improvement, lease, stock, supply, inventory goods, contractual rights, chattel paper, trade name, trade good now and hereafter to be acquired by Selim Textiles, Inc. for the premises at 358 5th Ave., Suite 3021, New York, New York 1001 (See the Exhibit A).   THE FINANCING STATEMENT IS EFFECTIVE UNTIL TERMINATION."

22.     There is no Exhibit A attached to the UCC financing statement recorded by Hwaseung with the Office of the Secretary of State of New York despite the language of the financing statement.  Also, the financing statement identifies the debtor as Selim Textile*s*, Inc. which his not the correct name of Selim Textile.  Therefore, the financing statement is totally defective against Selim Texile.

23.      In addition to the UCC financing statement filed by Hwaseung, there are two other parties which recorded UCC financing statements with the Office of the Secretary of State of New York ***prior to*** Hwaseung.  These parties are Industrial Bank of Korea, New York Branch ("Industrial Bank") which filed a financing statement on January 4, 2007, and Hana Financial

6

("Hana") which filed a financing statement on February 1, 2008. Both of these parties purport to have liens on substantially all assets of Selim Textile. Attached hereto as <u>Exhibit "E"</u> is a certified search from the Office of the Secretary of State of New York that reflects these filings.

24.    As of the Petition Date, Textile owes Industrial Bank approximately $300,000, and nothing to Hana.

25.    There are no contracts or agreement between Hwaseung and **Selim America**, and Hwaseung has no security interest or lien upon any assets of **Selim America.**

26.    As of the Petition Date, Textile had **no assets** other than several desks located in its New York office which essentially have no value. As of the Petition Date, America had in excess of $10 million of inventory, and significant accounts receivable which had not been factored.

27.    Additionally, America's assets are encumbered by one creditor – Prime Business Credit, Inc. ("Prime") – pursuant to a Factoring Agreement between America and Prime.

28.    As of the Petition Date, Textile owed Hwaseung approximately $53,000,000 for unpaid good. Several days before the Petition Date, Hwaseung purported to file a complaint against the Debtor, Textile, Kim and other defendants (some of which are customers of the Debtor) in the United States District Court for the Southern District of New York (the "New York District Court"). The Debtor and Selim Textile were never served with the complaint prior to the Petition Date.

29.    As soon as the Chapter 11 cases were filed, Hwaseung was notified of the bankruptcy cases of the Debtor. Despite being notified of Chapter 11 and knowing of the Chapter 11, Hwaseung proceeded to serve the Debtor with the complaint on August 26, 2010.

30.    In addition, after the Petition Date, Hwaseung continued to seek to obtain, through knowingly defective discovery tactics, property of the Debtor's estate including books and

records, and information which are confidential and proprietary, from third parties such as Frontier and the Debtor's other vendors, creditors and customers, in a continuing attempt to recover on its claim.

31.     Recognizing that Textile had no assets for it to foreclose upon, Hwaseung attempted to strong-arm Kim immediately prior to the Petition Date to signing a Joint Sales Agreement which would have forced Kim to cause the Debtor, which does have valuable inventory and accounts receivable subject to the lien of Prime, to transfer all of its rights and title in and to such assets to Hwaseung, free and clear of all liens.  Attached hereto as <u>Exhibit "F"</u> is a copy of this Joint Sales Agreement.

32.     Despite the constant and repeated harassment by employees and agents of Hwaseung, Kim refused to sign the Joint Sales Agreement.

33.     Despite never being served with the complaint or any papers at all, and despite knowing that the Debtor filed its Chapter on August 23, 2010, on August 24, 2010 (***after the Petition Date***), Hwaseung obtained from the New York District Court an Order to Show Cause for Preliminary Injunction, Temporary Restraining Order and Freeze Assets (the "OSC").  A copy of the OSC is attached hereto as <u>Exhibit "G"</u> and incorporated herein by reference as though set forth in full.

34.     The Debtor never received the *ex parte* papers associated with the OSC.

35.     By its OSC (which was issued after the Petition Date), the New York District Court ordered that, pending the hearing on Hwaseung's application for a preliminary injunction which was set for September 1, 2010 at 2:30 p.m., the defendants in that action could not pay any money to either Debtor or Kim until Hwaseung's debt was repaid.  Hwaseung was also required to post security in the amount of $10,000 by August 30, 2010, 3:00 p.m.

36.     In addition, even though it has no liens on America's assets, including the accounts

receivable, Hwaseung commenced the unauthorized, illegal and improper campaign of sending letters to America's account debtors instructing such account debtors to remit payments to Hwaseung.  No notice of this was ever given to Prime, which asserts a lien upon America's assets.  Attached as <u>Exhibit "H"</u> is a copy of a letter sent by Hwaseung to Keystone Textile, Inc., one of America's customers and is incorporated herein as though set forth in full.

37.    Based on information and belief, the Debtor further alleges that Hwaseung instructed Frontier (i) to immediately stop shipping any of the Debtor's goods to the Debtor's customers as instructed by the Debtor, and (ii) to immediately release and turn over to Hwaseung all documents and information relating to the Debtor to Hwaseung, including, without limitation, confidential and proprietary information regarding the Debtor's customers.

38.    Frontier did in fact stop shipping any of the Debtor's goods to the Debtor's customers as instructed by Hwaseung.

39.    Based on information and belief, and without any consent or notice to the Debtor, Frontier may have delivered to Hwaseung all documents and information relating to the Debtor, including, without limitation, confidential and proprietary information regarding the Debtor's customers.

40.    As a result, and based on information and belief, Hwaseung began contacting America's customers and advised them that (i) the Debtor would no longer be selling any textile goods to the customers, and (ii) Hwaseung could directly sell the textile goods that these customers needed to purchase.

### FIRST CLAIM FOR RELIEF

### For Declaratory Relief – Validity, Extent and Priority of Liens

41.    Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraph 1 through 40 above, inclusive, as though fully set forth in full.

9

42.    An actual dispute has arisen with respect to the validity, extent and priority of the liens asserted by the Defendant with respect to the assets of the Debtor.

43.    As a result, Plaintiff requests a determination by this Court as to the validity, extent and priority of the liens asserted by the Defendant with respect to the assets of the Debtor.

## SECOND CLAIM FOR RELIEF

### For Declaratory Relief – Amounts of Claims

44.    Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraph 1 through 40 above, inclusive, as though fully set forth in full.

45.    An actual dispute has arisen with respect to the allowed amounts of the secured and unsecured claims of the Defendant arising in the Debtor's bankruptcy cases.

46.    As a result, Plaintiff requests a determination by this Court as to the allowed amounts of the secured and unsecured claims of the Defendant arising in the Debtor's bankruptcy cases.

## THIRD CLAIM FOR RELIEF

### For Damages – Intentional Interference with Contracts

47.    Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraph 1 through 40 above, inclusive, as though fully set forth in full.

48.    The Defendant knew of the Debtor's existing contracts and business relationships with its customers to whom the Debtor shipped goods and orders.

49.    Despite knowing of these contracts and existing business relationships, the Defendant intentionally interfered with those contracts and business relationships by willfully, knowingly and intentionally obtaining confidential and proprietary customer information and exploiting such information in order to directly solicit sales, contracts and business relationship with the Debtor's customers, thereby causing permanent and significant harm to the Debtor, its

10

business and its creditors.

50.    As a direct result of the Defendant's actions and omissions, the Debtor has been damaged in an amount according to proof due to the loss of contracts, business relationships and goodwill with its customers and due to the Defendant's damage to and interference with such contracts, business relationships and goodwill.  As a direct and foreseeable consequence of the Defendant's interference, the Debtor's reputation in the industry and with its customers has been permanently damaged in an amount according to proof.

51.    The Defendant's actions were undertaken with fraud, malice and oppression, and with a conscious disregard of the rights of the Debtor, and, therefore, the Debtor is entitled to an award of exemplary and punitive damages against the Defendant in an amount according to proof.

### FOURTH CLAIM FOR RELIEF

**For Damages – Intentional Interference with Prospective Business Advantage**

52.    Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraph 1 through 40 above, inclusive, as though fully set forth in full.

53.    The Defendant knew of the Debtor's ongoing business relationships with its existing customers, the historical growth of the Debtor's business and the Debtor's efforts to further market and expand its business operations.

54.    By and through the willful, knowing and intentional acquisition of the Debtor's confidential and proprietary information regarding customers, the Defendant intentionally interfered with the Debtor's prospective economic advantage from ongoing relationships with its existing customers and future customers throughout the United States.  As a direct result of the Defendant's actions and omissions, the Debtor has been damaged in an amount according to proof.

55.    Defendant's actions were undertaken with fraud, malice and oppression, and

11

with a conscious disregard of the rights of the Debtor, and, therefore, the Debtor is entitled to an award of exemplary and punitive damages against the Defendant in an amount according to proof.

## FIFTH CLAIM FOR RELIEF

### For Damages – Negligent Interference with Business Relationships

56.    Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraph 1 through 40 above, inclusive, as though fully set forth in full.

57.    By and through the willful, knowing and intentional acquisition of the Debtor's confidential and proprietary information regarding customers, the Defendant negligently interefered with the Debtor's existing business relationships with its current customers throughout the United States.

58.    As a direct result of the Defendant; negligent interference, the Debtor has been damaged in an amount according to proof.

## SIXTH CLAIM FOR RELIEF

### For Damages – Willful and Intentional Violation of the Automatic Stay

59.    Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraph 1 through 40 above, inclusive, as though fully set forth in full.

60.    11 U.S.C. Section 362(a) provides, in pertinent part:

"Except as otherwise provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title ... operates as a stay, applicable to all entities of -

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under

this title, or to recover a claim against the debtor that arose before the commencement of a case under this title;

...

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

...

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of a case under this title...."

61.    The acts of the Defendant were taken willfully and intentionally for purposes of issuance or employment of service, obtaining possession of or to exercise control over property of the estate, and to collect or recover on their pre-petition claims.

62.    Hwaseung has deliberately, willfully, knowingly and intentionally violated the automatic stay by, among other things, serving the New York District Court complaint upon the Debtor after the Petition Date, instructing Frontier not to release the Debtor's inventory to the Debtor, instructing Frontier to deliver to it all information and documents pertaining to the Debtor including confidential and proprietary information and documents, employing knowingly defective subpoenas and serving such subpoenas upon vendors, creditors and customers to obtain information and documents of the Debtor, and continuing in its efforts to contact and communicate with the Debtor's customers and account debtors and instructing them to make payments of the Debtor's outstanding invoices directly to Hwaseung in order to collect on its pre-etition claim.

63.     In contacting and communicating with the Debtor's creditors, vendors and customers and account debtors, Hwaseung deliberately and intentionally misrepresented material facts to such customers which were false and known to be false by Hwaseung at the time they were made for purposes of preventing the Debtor from being able to collect its outstanding accounts receivable and to collect on its pre-petition claim.

64.     The foregoing deliberate and intentional acts and conduct of the Defendant to collect its pre-petition claims and/or obtain possession of property of the estate were without just cause or excuse and necessarily produced harm and injury to the Debtor and property of the Debtor in that the Defendant's conduct prevented the Debtor from being able to retrieve and sell its inventory, continue to do business with its customers, and collect its accounts.

65.     The acts and conduct of the Defendant described herein constitute intentional and willful violation of the automatic stay.

66.     As a result of the Defendant's conduct, the Debtor has suffered actual monetary damages in an amount subject to proof.

67.     Based on the egregious conduct taken by the Defendant, Plaintiff is entitled to exemplary and punitive damages, in an amount as determined by the Court.

## SEVENTH CLAIM FOR RELIEF

### For Permanent Injunction

68.     Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraph 1 through 40 above, inclusive, as though fully set forth in full.

69.     Plaintiff requests a permanent injunction (A) enjoining Hwaseung and all officers, directors, representatives, employees, or agents of Hwaseung from contacting or communicating with customers of the Debtor, in writing, orally or otherwise, with respect to outstanding and open accounts and invoices due and owing to the Debtor, or from taking any further action to

14

limit, impair, or cease the release of the Debtor's inventory by Frontier and Uni Global, and (B) requiring and directing Hwaseung to immediately turn over to the Debtor all information or documents that it has obtained from that it has obtained from Frontier.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the following relief:

A.    With respect to the First Claim for Relief, entering a judgment with respect to the validity, extent and priority of the liens asserted by the affected Defendants with respect to the assets of the Debtor and/or Selim Textile;

B.    With respect to the Second Claim for Relief, entering a judgment with respect to the allowed amounts of the secured and unsecured claims of the affected Defendants arising in the Debtor's bankruptcy case and/or Selim Textile's bankruptcy case;

C.    With respect to the Third Claim for Relief, entering a judgment for damages and exemplary and punitive damages, in favor of Plaintiff and against the affected Defendants in an amount subject to proof at trial;

D.    With respect to the Fourth Claim for Relief, entering a judgment for damages and exemplary and punitive damages, in favor of Plaintiff and against the affected Defendants in an amount subject to proof at trial;

E.    With respect to the Fifth Claim for Relief, entering a judgment for damages in favor of Plaintiff and against the affected Defendants in an amount subject to proof at trial;

F.    With respect to the Sixth Claim for Relief, entering a judgment for damages and punitive damages, in favor of Plaintiff and against the affected Defendants in an amount subject to proof at trial;

G.    With respect to the Seventh Claim for Relief, granting a permanent injunction against the affected Defendants; and

H.      With respect to All Claims for Relief, entering judgment in favor of Plaintiff and against Defendants for all costs of this action, including, without limitation, all attorneys' fees and costs incurred; and

I.      With respect to All Claims for Relief, granting to Plaintiff and against Defendants such other and further relief as the Court deems just and proper under the circumstances herein.

## <u>RESERVATION OF RIGHTS</u>

Plaintiff reserves all of its rights to amend this Complaint as it deems necessary and appropriate, including, without limitation, adding any additional allegations, claims for relief, or prayer for relief.

Dated:  August 27, 2010                    SELIM AMERICA, INC.


By:___*/s/ Monica Y. Kim*_____
            Timothy J. Yoo
            Monica Y. Kim
            Levene, Neale, Bender, Yoo & Brill L.L.P.
            Attorneys for Plaintiff

**EXHIBIT A**

# PROMISSORY NOTE

### Revolving Credit

$1,000,000.00

City of New York
State of New York

January    , 2010

**FOR VALUE RECEIVED**, on demand after date, **Selim Textiles, Inc.**, having a place of business at 358  5th Avenue, Suite 301, New York, New York 10001, (the "Promisor") promises to pay to the order of Hwaseung Networks America, Corp., having a place of business at 485 Seventh Avenue, Suite 309, New York, New York  10018 (the "Promisee") at its place of business or such other place as the holder of this note may from time to time designate, the principal sum of One Million ($1,000,000.00) Dollars or the aggregate unpaid principal amount of all advances or readvances pursuant to a Revolving Sales Credit Agreement executed on even date herewith, and to pay to Promisee within 90 days of the then credit amount extended to Promisor. For example, if promisor receives goods on Day 1 from Promisee, then the payment for good delivered shall be due and payable on or before 90 from Day 1. Likewise any payment for subsequent deliveries shall be due and payable 90 days from receipt by Promisor.

Said payment are payable in lawful money of the United Stated of America to the Promisee at the above stated address or at such other address as shall be given to the undersigned by the Promisee or by any subsequent holder of this Note, in immediately available funds.

This Note is subject to the terms and conditions of a Revolving Credit Agreement of even date herewith between the parties which terms and conditions are incorporated by reference to the same extent, force, and effect as if they were set forth in their entirety.

This Note is secured by a security agreement that was executed on or about August 12, 2008 and by a secured interest in the Borrower's corporate assets and by continuing personal guarantees.

In the event that any payment required to be made hereunder is not made within fifteen (15) calendar days after same is due, a late charge of two (2%) percent of such overdue payment will be charged to and paid by the undersigned. In addition, upon Borrower's default hereof, at the option of the Promisee, the interest rate charged hereon may be increased by two (2%) percent without notice to the Borrower. Any unpaid interest or late charges shall become part of the Principal hereunder and said increased default interest rate may be charged thereon until fully paid.

Promissor shall have the right to prepay the obligation set forth in this note in whole or in part at any time without penalty. Prepayments shall first be applied to the interest due, and then to the remaining principal.

If any law, which applies to this Note and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Note exceed the permitted limits, then any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit and any sums already collected from the undersigned which exceeded permitted limits will be refunded to the undersigned.

Promissor waives presentment, protest, demand, and notice of dishonor. No renewal or extension of this note, no release of collateral securing payment of this note, and no delay in the enforcement of this note or in exercising any right or power of the payee shall affect the liability of Promissor. The defense of the statute of limitations against any demand made by the payee is expressly waived by Promissor.

No amendment, modification, or waiver of any provision of this Note nor consent to the any departure by the undersigned therefrom shall be effective, irrespective of any course of dealing unless the same shall be in writing and signed by the Bank and then, such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. The options, powers and rights of the Bank specified therein are in addition to those otherwise available to the Bank.

The Promisee reserves the right to evaluate the secured property and corporate assets from time to time during the time this Note is outstanding and/or unpaid and may, at its sole discretion, determine the amount of loan advancements under this Note within the limits of the maximum credit allowed as above stated.

In the event the indebtedness evidenced by this Note is collected by or through an attorney, the holder of this note shall be entitled to recover reasonable attorney fees to the extent permitted by the laws of New York.

This Note shall be governed by, and construed in accordance with, the laws of the State of New York

*The Promisor agrees that as consideration for Promisee to enter into this Promisory Note and Revolving Sales Credit, Promisor will only purchase Textiles and Fabrics from Promisee exclusively. This covenant shall continue in duration so long as this Promissory Note and Revolving Sales Credit Agreement is in full force and effect.*

Selim Textiles, Inc.

Witness:


_____        By: _____

                                            June Yong Kim as President and Individually

## CORPORATE ACKNOWLEDGMENT

STATE OF NEW YORK       )
                        )ss.:
COUNTY OF NEW YORK  )

On the ___ day of January, 2010, before me personally came June Yong Kim to me known, who did depose and say that he resides at _____ , that he is the President of Selim Textiles, Inc, the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation and that he signed his name thereto by like order.

_____

**EXHIBIT B**

# SECURITY AGREEMENT

AGREEMENT, dated as of January ____ (, 2010 between Selim Textiles, Inc. having an address at 358 5th Avenue, Suite 301, New York, New York 10001 ("Debtor"), and Hwaseung Networks America Corp., having an address of 485 Seventh Avenue Suite 309, New York, New York 10018 ("Secured Party").

# WITNESSETH:

**WHEREAS,** concurrently herewith Secured Party is extending revolving credit line to Debtor the sum of Thirty Million ($30,000,000.00) Dollars, as evidenced by a Promissory Note of even date herewith (the "Note"); and

**WHEREAS,** in order to induce Secured Party to make said loan, Debtor has agreed to pledge to Secured Party certain property as security for the loan;

**NOW THEREFORE,** in consideration of Ten Dollars, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. **Definitions.** The following terms as used in this Agreement shall have the meanings set forth below:

"Collateral" shall mean all of the property set forth on Exhibit A attached hereto and made a part hereof, and all property of the same class or character acquired by Debtor subsequent to the date hereof, and all proceeds thereof, and all substitutions, replacements and accessions thereto.

"Obligations" shall mean all principal and interest due or to become due under the aforesaid Note, and any other indebtedness or liability of Debtor to Secured Party, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising.

2. **Creation Of The Security Interest.** Debtor hereby grants to Secured Party a security interest in all of the right, title and interest of Debtor in and to the Collateral to secure the full and prompt payment and performance of all of the Obligations.

3. **Debtor's Obligations to Pay.** Debtor shall pay and perform all of the Obligations of Debtor to Secured Party as the same may become due according to their terms. Debtor shall be liable for, and shall reimburse to Secured Party, all expenses, including reasonable attorneys' fees, incurred or paid in connection with establishing, perfecting, maintaining, protecting or enforcing any of Secured Party's rights and

1

08/23/2016 16:32 FAX 3232559309    KEYSTONE TEXTILE INC    Case 2:10-bk-45503-RN    Doc 8    Filed 08/27/10    Entered 08/27/10 15:43:44    Desc
08/12/2010  23:31     2126500200  Main Document    HWA SEUNG USA CORP    Page 23 of 52    @005/014

PAGE  03

remedies hereunder.

**4. Protection of the Collateral.** Debtor shall defend the title to the Collateral against all claims and demands whatsoever. Debtor shall keep the Collateral free and clear of all liens, charges, encumbrances, taxes and assessments, and shall pay all taxes, assessments and fees relating to the Collateral. Upon request by Secured Party, Debtor shall furnish further assurances of title, execute any further instruments and do any other acts necessary to effectuate the purposes and provisions of this Agreement. The risk of loss of the Collateral at all times shall be borne by Debtor. Debtor shall keep the Collateral in good repair and condition and shall not misuse, abuse or waste the Collateral or allow the Collateral to deteriorate except for normal wear and tear.

**5. Filing And Recording.** Debtor, at its own cost and expense, shall execute and deliver to Secured Party any financing statements, and shall procure for Secured Party any other documents, necessary or appropriate to protect the security interest granted to Secured Party hereunder against the rights and interests of third parties, and shall cause the same to be duly recorded and filed in all places necessary to perfect the security interest of Secured Party in the Collateral. In the event that any recording or re-filing thereof (or filing of any statements of continuation or assignment of any financing statement) is required to protect and preserve such security interest, Debtor, at its own cost and expense, shall cause the same to be re- recorded and/or re-filed at the time and in the manner requested by Secured Party. Debtor hereby authorizes Secured Party to file or re-file any financing statements or continuation statements in respect of the security interest granted pursuant to this Agreement which at any time may be required or appropriate, although the same may have been executed only by Secured Party, and to execute such financing statement on behalf of Debtor. Debtor hereby irrevocably designates Secured Party, its agents, representatives and designees, as agent and attorney-in-fact for Debtor for the aforesaid purposes.

**6. Default.** The occurrence of any one or more of the following events (herein referred to as "Events of Default") shall constitute a default hereunder, whether such occurrence is voluntary or involuntary or comes about or is effected by operation of law or pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental authority:

(a) If Debtor shall fail to pay, perform or observe any covenant, agreement, term or provision of this Agreement, the Note or any other agreement or arrangement now or hereafter entered into between the parties hereto or with respect to any Obligation of Debtor to Secured Party; or

(b) If any representation, warranty or other statement of fact herein or in any writing, certificate, report or statement at any time furnished to Secured Party pursuant to or in connection with this Agreement or the Note shall be false or misleading in any material respect; or

2

08/23/2010 16:34 FAX 3232250803    Case 2:10-bk-45503-RN    Doc 8    KEYSTONE TEXTILE INC    Filed 08/27/10    Entered 08/27/10 15:43:44    Desc

08/12/2010  23:31    2128588288    Main Document    HWA SUNG USA CORP    Page 24 of 52    PAGE  04

(c) If Debtor shall: admit in writing its inability to pay its debts generally as they become due; file a petition for relief under the bankruptcy laws or a petition to take advantage of any insolvency act; make an assignment for the benefit of creditors; commence a proceeding for the appointment of a receiver, trustee, liquidator or conservator of itself or the whole or any substantial part of its property; file a petition or answer seeking reorganization or arrangement or similar relief under the Federal Bankruptcy Laws or any other applicable law or statute of the United States or any State; or if Debtor shall be adjudged a bankrupt or insolvent, or a court of competent jurisdiction shall enter any order, judgment or decree appointing a receiver, trustee, liquidator or conservator of Debtor or of the whole or any substantial part of property of Debtor or approves a petition filed against Debtor seeking reorganization or similar relief under the Federal Bankruptcy Laws or any other applicable law or statute of the United States or any State; or if, under the provisions of any other law for the relief or aid of debtors, a court of competent jurisdiction shall assume custody or control of Debtor or the whole or any substantial part of its property; or if there is commenced against Debtor any proceeding for any of the foregoing relief; or if Debtor by any act indicates its consent to, approval of, or acquiescence in any such proceeding or petition; or

(d) If any creditor of Debtor for any reason whatsoever hereafter shall accelerate payment in whole or in part of any outstanding obligation owed to it by Debtor under any agreement or arrangement, or if any judgment against the Debtor or any execution against any of its property for any amount remains unpaid, unstayed or undismissed for a period in excess of ten days.

7. **Rights and Remedies.** Upon the occurrence of an Event of Default, the Obligations shall immediately become due and payable in full without notice or demand. Secured Party shall have all rights and remedies provided by the Uniform Commercial Code in effect in the State of New York on the date hereof. In addition to, or in conjunction with, or substitution for such rights and remedies, Secured Party may at any time and from and after the occurrence of an Event of Default hereunder:

(a) With or without notice to Debtor, foreclose the security interest created herein by any available judicial procedure, or take possession of the Collateral, or any portion thereof, with or without judicial process, and enter any premises where the Collateral may be located for the purpose of taking possession of or removing the same, or rendering the same unusable, or disposing of the Collateral on such premises, and Debtor agrees not to resist or interfere therewith;

(b) Require Debtor to prepare, assemble or collect the Collateral, at Debtor's own expense, and make the same available to Secured Party at such place as Secured Party may designate, whether at Debtor's premises or elsewhere;

(o) Sell, lease or otherwise dispose of all or any part of the Collateral, whether in its then condition or after further preparation, in Debtor's name or in its own name, or in the name of such party as Secured Party may designate, either at public or private sale (at which Secured Party shall have the right to purchase), in lots or in bulk, for cash or for credit,

3

08/23/2010 18:31 FAX 3282250000    KEYSTONE TEXTILE INC    ☑007/014

Case 2:10-bk-48503-RN    Doc 8    Filed 08/27/10    Entered 08/27/10 15:43:44    Desc
08/12/2010 23:31    2129580200    Main Document    HWA SEUNG USA CORP    Page 25 of 52     PAGE 05

with or without warranties or representations, and upon such other terms as Secured Party, in its sole discretion, may deem advisable. Ten days' written notice of such public sale date or dates after which private sale may occur, or such lesser period of time in the case of an emergency, shall constitute reasonable notice hereunder;

(d) Execute and deliver documents of title, certificates or origin, or other evidence of payment, shipment or storage of any Collateral or proceeds on behalf of and in the name of Debtor;

(e) Remedy any default by Debtor hereunder, without waiving such default, and any monies expended in so doing shall be chargeable with interest to Debtor and added to the Obligations secured hereby; and

(f) Apply for an injunction to restrain a breach or threatened breach of this Agreement by Debtor.

If, after an Event of Default, Secured Party shall foreclose upon the security interest in the Collateral, Debtor shall pay to Secured Party, as compensation for the attorneys' fees of Secured Party, an amount equal to percent of the then outstanding Obligations.

8. **Cumulative Rights**. All rights, remedies and powers granted to Secured Party herein, or in any instrument or document related hereto, or provided or implied by law or in equity shall be cumulative and may be exercised singly or concurrently on any one or more occasions.

9. **Debtor's Representations and Warranties**. Debtor hereby represents and warrants to Secured Party that:

(a) Neither the execution nor the delivery of this Agreement, nor the consummation of the transactions herein contemplated, nor compliance with the provisions hereof, will violate any law or regulation, or any order or decree of any court or governmental instrumentality, or will conflict with, or result in the breach of, or constitute a default under, any indenture, mortgage, deed or trust, agreement or other instrument to which Debtor is a party or by which Debtor may be bound, or result in the creation or imposition of any lien, charge or encumbrance upon any of the property of Debtor.

(b) Debtor has the power to execute, deliver and perform the provisions of this Agreement and all instruments and documents delivered or to be delivered pursuant hereto, and has taken or caused to be taken all necessary and appropriate actions to authorize the execution, delivery and performance of this Agreement and all such instruments and documents.

(c) Debtor is the legal and equitable owner of the Collateral, free and clear of all liens, security interests, claims and encumbrances of every kind and nature.

(d) No default exists, and no event which with notice or the passage of time, or both,

4

would constitute a default under the Collateral by any party thereto, and there are no offsets, claims or defenses against the obligations evidenced by the Collateral, except as may be expressly set forth on Exhibit A hereto.

10. **Notices.** All notices, requests, demands or other communications provided for herein shall be in writing and shall be deemed to have been given when sent by registered mail or certified mail, return receipt requested, addressed to the parties at their respective addresses herein above set forth, or at such other addresses as the parties may designate in writing.

11. **Modification and Waiver.** No modification or waiver of any provision of this Agreement, and no consent by Secured Party to any breach thereof by Debtor, shall be effective unless such modification or waiver shall be in writing and signed by Secured Party, and the same shall then be effective only for the period and on the conditions and for the specific instances and purposes specified in such writing. No course of dealing between Debtor and Secured Party in exercising any rights or remedies hereunder shall operate as a waiver or preclude the exercise of any other rights or remedies hereunder.

12. **Applicable Law.** This Agreement shall be construed in accordance with and shall be governed by the laws of the State of New York.

13. **Benefit.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and assigns.

**IN WITNESS WHEREOF,** the parties hereto have duly executed this Agreement as of the date first above written.

Selim Textiles, Inc.
By: June Yong Kim, president

5

STATE OF               )
                        ) SS.:

COUNTY OF         )

On the _____ day of January 2009, before me personally came June Yong Kim to me known to be the individual described in and who executed the foregoing Security Agreement, and acknowledged that he executed said Security Agreement as president of the corporation and represented that he is authorized to act on behalf of the same.

_____

Notary Public

We, being all the shareholders of Selim Textiles, Inc. agreed to pledge all of our shares in Selim Textiles, Inc. to secure the revolving credit loan of $1,000,000.00 from Hwaseung Networks America Corp. to Selim Textiles, Inc.

_____

June Yong Kim

6

# EXHIBIT A

A.  All equipment, fixture, furniture, leasehold improvement, lease, stock, supply, inventory goods, contractual rights, chattel paper, trade name, trade good now and hereafter to be acquired by Selim Textiles, Inc. for the premises at 358 5th Avenue, Suite 3021, New York, New York and wherever they may be located.

B.  All the outstanding shares of Selim Textiles Inc. held by June Yong Kim.

C.  All the Outstanding account receivables existing at the time of declaration of default by the Secured Party.

7

## CORPORATE ACKNOWLEDGMENT

STATE OF NEW YORK    )
                     )ss.:
COUNTY OF NEW YORK  )

On the __ day of January, 2010, before me personally came June Yong Kim to me known, who did depose and say that he resides at _____, that he is the President of Selim Textiles, Inc, the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation and that he signed his name thereto by like order.

S.S #: 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

**EXHIBIT C**

## ASSIGNMENT OF ACCOUNTS RECEIVABLE OF SELIM TEXTILES, INC.

THIS ASSIGNMENT, made this the day of January, 2009 by Selim Textiles, Inc. (herein called "the Assignor"), to Hwaseung Networks America, Corp., having its principal office at 485 Seventh Avenue, Suite 309, New York, New York 10018 (herein called "the Assignee"),

### WITNESSETH:

FOR VALUE RECEIVED, the Assignor hereby grants, transfers, and assigns to the Assignee, its successors and assigns all of the right, title and interest of the Assignor in and to all outstanding accounts receivable due to Assignor from its debtors, including and Factoring agreements (collectively referred to as "the Accounts"),

For the purpose of securing (a) payment of all sums now or at any time hereafter due to the Assignee and secured by a certain security agreement made by the Assignor to the Assignee dated January ___ / ___ , 2010

### THE ASSIGNEE AGREES THAT:

A.     So long as there shall exist no default by the Assignor in the payment of any indebtedness secured hereby or in the performance of any obligation of the Assignor herein or in the security agreement or any other instrument securing said indebtedness, the Assignor shall have the right to collect, all Accounts and profits from the business to retain, use and enjoy the same.

THE ASSIGNOR AGREES, JOINTLY AND SEVERALLY IF THERE BE NO MORE THAN ONE ASSIGNOR, WITH RESPECT TO ALL THE ACCOUNT RECEIVABLES AND that:

1.     The Assignor will fulfill or perform each and every condition and covenant of is obligation to all the Accounts; give prompt notice to the Assignee of any notice of default by the Assignor under any contractual obligation to any of the Accounts, together with a complete copy of any such notice; at the sole cost and expense of the Assignor, enforce, all the obligations of the Accounts, not to terminate the Accounts and not waive or release the Accounts from any obligations or conditions to be performed.

2.     The rights assigned hereunder include all the Assignor's right and power to modify the contractual obligation or to terminate any individual account in the Accounts.

3.     At the Assignor's cost and expense, the Assignor will appear in and defend any action growing out of or in any manner connected with the Accounts or the obligations or liabilities of the Assignor, Accounts or any guarantor thereunder.

4.     Should the Assignor fail to make any payment or to do any act as herein provided,

08/23/20 16 32 FAX 3232350803    Doc 8    KEYSTONE TEXTILE E INC    Entered 08/27/10 15:43:44    Desc
Case 2:10-bk-45503-RN    Filed 08/27/10    Main Document    Page 32 of 52

08/12/2010   23:31    2120608200    HWA SEUNG USA CORP    PAGE   11

then the Assignee, but without obligation to do so and without notice to or demand on the Assignor and without releasing the Assignor form any obligation herein, may make or do the same, including specifically, without limiting its general powers, appearing in and defending any action purported to affect the security hereof or the rights or powers of the Assignee and performing any obligation of the Assignee, and in exercising any such powers paying necessary costs and expenses, employing counsel and incurring and paying reasonable attorney's fees; and the Assignor will pay immediately upon demand all sums expended by the Assignee under the authority hereof, together with interest thereon at 18% per annum, and the same shall be added to said indebtedness and shall be secured hereby and by any security agreement.

5.    The whole of said indebtedness shall become due (a) upon the election by the Assignee to accelerate the maturity of the indebtedness pursuant to the provisions of the Revolving Credit Line Agreement or any other instrument which may be held by the Assignee as security for the indebtedness or (b) at the option of the Assignee, after any attempt by the Assignor to exercise any of the rights described in paragraph 2 or after any default by the Assignor hereunder and the continuous of such default for 10 days after notice and demand.

6.    After any attempt by the Assignor to exercise any of the rights described in Paragraph described in paragraph 2 or after any default by the Assignor in the payment of said indebtedness or in the performance of any obligation of the Assignor here or in the Revolving Credit Line Agreement or any other instrument securing said indebtedness. The Assignee at its option, without notice, irrespective of whether Declaration of Default under any deed of Trust has been delivered to the trustee thereunder, and without regard to the adequacy of security for the indebtedness hereby secured, whether in person or by agent with or without bringing any action or proceeding, or by a receiver to be appointed by a court, may enter upon, take possession of and operate the premises, make enforce, modify, and accept the surrender of leases obtain and evict tenants, fix or modify rents and do any acts which the Assignee deems proper to protect the security hereof until all indebtedness secured hereby is paid in full, and wither with or without taking possession of the premises, in its own name sue for or otherwise collect and receive all rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby in such order as the Assignee may determine.

7.    (a) The Assignor has not executed any prior assignment of any of its rights to the Accounts; (b) the Assignor has not done anything which might prevent the Assignee from or limit the Assignee in operating under any of the provisions hereof.

8.    The Assignee shall not be obligated to perform or discharge any contractual obligation to the Accounts or by reason of this Assignment, and the Assignor hereby agrees to indemnify the Assignee against and hold it harmless from any and all liability, loss or damage.

9.    The Assignment shall inure to the benefit of the successors and assigns of the Assignee and shall bind the Assignor's legal representatives, successors and assigns.

THE PARTIES AGREE that all notices, demand or documents which are required or permitted to be given or served hereunder shall be in writing and shall be deemed given when

08/23/2010 16:33 FAX 3232350902    KEYSTONE TEXTILE INC.                                    ☑003/014
Case 2:10-bk-45503-RN    Doc 8    Filed 08/27/10    Entered 08/27/10 15:43:44    Desc

08/12/2010  23:31    2128698288  Main Document  HWA SEUNG USA CORP    PAGE  12

sent by certified mail addressed to the Assignor at the Addressed to the Assignor.

    IN WITNESS WHEREOF, the Assignor has duly executed this assignment the
_\_\_\_\_ |₆ƒ th day of January 2010.

                                   Selim Textiles, Inc.

**EXHIBIT D**

017751    2009 MAY 26  AM 9:00

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Suk Hwa Hong, Esq.
Matthew Jeon, P.C.
2400 Lemoine Avenue, Suite 201
Fort Lee, New Jersey 07024

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME – Insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Selim Textiles, Inc. | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 358 5th Avenue, Suite 301 | New York | NY | 10001 | U.S.A. |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE. ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| Not Applicable | | Corporation | New York | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – Insert only one debtor name (2a or 2b) – do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE. ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| Not Applicable | | | | | ☐ NONE |

3. SECURED PARTY'S NAME - (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Hwaseung Networks America Corp. | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 485 Seventh Avenue, Suite 309 | New York | NY | 10018 | U.S.A |

4. This FINANCING STATEMENT covers the following collateral:

All equipment, fixture, furniture, leasehold improvement, lease, stock, supply, inventory goods, contractual rights, chattel paper, trade name, trade good now and hereafter to be acquired by Selim Textiles, Inc. for the premises at 358 5th Avenue, Suite 301, New York, New York 1001. (See the Exhibit A).

THE FINANCIAL STATEMENT IS EFFECTIVE UNTIL TERMINATION.

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6 ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS    Attach Addendum | | (if applicable) | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) (ADDITIONAL FEE)    (optional) | | ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 | |
| 8 OPTIONAL FILER REFERENCE DATA | | | | | | |

FILING OFFICE COPY – UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

UCC1 FINANCING STATEMENT
Rev. 5/22/02  PS/08

Powered by
HotDocs®

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com  800.222.0510

**FILING NUMBER: 200905260297669**

# EXHIBIT E

Texhile
NY

## CLAS INFORMATION SERVICES
### UCC Search Report

The following represents a listing of the documentation you requested through a careful search of effective UCC filings recorded in the Office of the Secretary of State of New York licensed from the State or an independent thi party and maintained in computerized form and available through our offices. Variations of the Name and Address of the search key may appear on this report as a result of the search findings and your individual reque for that information.

Because we cannot independently verify the accuracy of the public information maintained by the responsible government agency or other sources of this data, we make no guaranties, representations or warranties as to th accuracy or completeness of this report. In addition, we cannot verify whether any personally identifiable information is included (such as social security numbers or similar personal information), and to the extent such personally identifiable information is included in any information or record, you agree that you will not use such information in violation of any applicable law. We cannot and do not accept any liability for errors or omissions, nor do we accept any liability with respect to your use of any information or record that may include personally identifiable information.

**This report reflects records effective 08/16/2010**

| | |
|---|---|
| Order No | 25002436 |
| User Name | DAN MCVICKER |
| bill code | 110597-29642DW |
| loan num | Ref2 |
| | Ref3 |
| | Ref4 |

State of New York UCC Debtor Name Search results performed on the following Search Key
**Name = SEL% TEX%**
**Exp./Term. Liens = Yes**

---

**\*1**   200701048006486 Original filed on 01/04/2007
   expires on 01/04/2012
   Debtor          SELIM TEXTILE, INC.
                        358 5TH AVE. STE 301
                        NEW YORK NY 10001

   SecPty          INDUSTRIAL BANK OF KOREA, NEW YORK BRANCH
                        1250 BROADWAY #37TH FL
                        NEW YORK NY 10001

**\*2**   200802015109489 Original filed on 02/01/2008
   expires on 02/01/2013
   Debtor          SELIM TEXTILE, INC.
                        358 5TH AVE.
                        NEW YORK NY 10001

   SecPty          HANA FINANCIAL, INC.
                        1000 WILSHIRE BLVD.
                        LOS ANGELES CA 90017

**\*3**   200905260297669 Original filed on 05/26/2009
   expires on 05/26/2014
   Debtor          SELIM TEXTILES, INC.
                        358 5TH AVENUE
                        NEW YORK NY 10001

   SecPty          HWASEUNG NETWORKS AMERICA CORP.
                        485 SEVENTH AVENUE

NEW YORK NY 10018

Report generated on 08/24/2010 at 12:47 PM CST

[End of Report]

**400629**    **2007 Jan 04 PM03:03**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

> INDUSTRIAL BANK OF KOREA, NEW YORK BRANCH
> 1250 BROADWAY #37TH FL
> NEW YORK, NY 10001, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME  SELIM TEXTILE, INC. | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS  358 5TH AVE. STE 301 | CITY  NEW YORK | STATE  NY | POSTAL CODE  10001 | COUNTRY  USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION  CORPORATION | 1f. JURISDICTION OF ORGANIZATION  NEW YORK STATE | 1g. ORGANIZATIONAL ID #, if any     □ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any     □ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME  INDUSTRIAL BANK OF KOREA, NEW YORK BRANCH | | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS  1250 BROADWAY #37TH FL | CITY  NEW YORK | STATE  NY | POSTAL CODE  10001 | COUNTRY  USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
ALL INVENTORY, GOODS, EQUIPMENT, ACCOUNTS RECEIVABLES, DOCUMENTS OF TITLE, NOTES, GENERAL INTANGIBLES, AND OTHER PROPERTY OF THE DEBTOR, WHETHER NOW OWNED OR HEREAFTER ACQUIRED, AND WHEREVER LOCATED.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. □ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**Filing Number-200701048006486**

**711076**   **2008 Feb 01 PM06:50**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

    UCC Direct Services
    2727 Allen Parkway
    Houston, TX 77019, USA
    nysack@uccdirect.com

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME SELIM TEXTILE, INC. | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS 358 5TH AVE., #301 | CITY NEW YORK | STATE NY | POSTAL CODE 10001 | COUNTRY USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION NY | 1g. ORGANIZATIONAL ID #, if any None | ☒ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME HANA FINANCIAL, INC. | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS 1000 WILSHIRE BLVD., SUITE 2000 | CITY LOS ANGELES | STATE CA | POSTAL CODE 90017 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:
The collateral shall consist of all of the personal property of debtor wherever located, and now owned or hereafter acquired, including but not limited to, Accounts, including but limited to, health care insurance receivables; chattel paper; inventory; equipment; instruments, including but not limited to promissory notes; investment property; documents; deposit accounts; letter of credit rights; general intangibles, including payment intangibles; supporting obligations relating to any of the foregoing; all accessions, additions, replacements and substitutions relating to any of the foregoing; and to the extent not listed above as original collateral, products and proceeds relating to the foregoing, including but not limited to, insurance proceeds such as business interruption, property damage or liability; general intangibles and other account proceeds relating to any of the foregoing.

| 5. ALTERNATIVE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum | | (if applicable) | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA NY-0-20455140-A 6449 SELIM TEXTILE, INC. (1) | | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-200802015109489

**EXHIBIT F**

Joint Sales Agreement

This Joint Sales Agreement is entered into as of this 22 day of August 2010 by and between

> Selim Textile, Inc., a company established and organized under the laws of the State of New York, Selim America, Inc., a company organized and existing under the laws of the State of New York, and June Yong Kim, an individual resident of the State of California; and

> Hwaseung Networks America, Corp., a company organized and existing under the laws of the State of New York (hereinafter referred to as "HS").

WITNESSETH:

WHEREAS, Selim Textile, Inc. and June Yong Kim entered into a number of agreements with HS providing for the sale of large quantities of yarn on a credit basis and providing for various security arrangements to secure payment for the yarn;

WHEREAS, Selim Textile, Inc. and June Yong Kim committed material breaches of those agreements and security mechanisms and the parties wish to provide for a mechanism pursuant to which all sums payable to HS can be paid in full.

NOW, THEREFORE, the parties hereto agree as follows:

Article 1.   Outstanding Payables

*APPROXIMATE*

The total amount payable to HS as of the date hereof is $53,361,822.44 and Selim agrees to repay in full the amount pursuant to the terms of this Agreement and liability therefore shall be joint and several (said amount is hereinafter referred to as "Selim Payables"). *THE PARTIES SHALL CONFIRM THE AMOUNT OF SELIM PAYABLES WITHIN TWO WEES OF THE DATE HEREOF.*

Article 2.   Transfer of Title to Inventory

Selim agrees that upon execution hereof all rights and title to all inventory of unsold yarn shall be transferred free and clear of any liens or encumbrances to  HS irrespective of the location of such yarn to include any warehouses, storage facilities, customer premises or any location whatsoever.   Notice of such transfer of title shall be delivered to each warehouse and customer where such yarn is stored.  The invoice value of such yarn as sold by HS to Selim shall be credited against the Selim Payables.

Article 3.  Transfer of Title of Accounts Receivable

Selim agrees that upon execution hereof all rights and title to any accounts payable to Selim shall be transferred free and clear of any liens, attachments or encumbrances to HS.  Notice of such transfer of title shall be given by Selim and HS to each customer and their consent obtained.   Selim represents and warrants that attached list of

customers set forth in Exhibit A attached hereto is a complete list of all customers of
Selim and the accounts receivable and the amounts due from each customer (said
accounts receivables are hereinafter referred to as "AR").   Upon receipt of good value
by HS of any of the AR, the amount so received shall be credited against the Selim
Payable.

Article 4.  Cash on Hand

Selim agrees that 90% of all cash held in any bank account owned or controlled by
Selim as of the date hereof shall be transferred to HS and credited against the Selim
Payable.  Selim agrees to provide to HS within three days of the date hereof complete
copies of all bank statements of any bank account owned or controlled by Selim
commencing with January 2010.

Article 5.  Future Sales

The parties agree that all future sales of yarn to the customers identified in the list of
customers attached hereto as Exhibit B or any purchasers orders obtained by Selim for
product shall be managed and controlled on a joint basis.  The price offered to such
customers on all future sales shall be agreed upon by HS and Selim agrees that no
such sales shall be made at prices not agreed upon by HS.  All sales agreements shall
be between HS and such customer and all future accounts receivable shall be paid
directly to HS.  The parties agree, however, that the margin on such sales which shall
be the difference between the price paid by the customer and the HS invoice value of
such yarn, plus any customs, freight, transportation and warehousing expense shall be
shared between HS and Selim on a 50:50 basis.  The amount of such margin payable
to Selim hereunder shall be calculated on a quarterly basis and paid to Selim within 15
days of the end of the quarter, provided, however, that so long as there remains any
outstanding amount of the Selim Payable, of the margin payable to Selim, sixty percent
(60%) shall be credited against the Selim Payable and forty percent (40%) shall be paid
to Selim.

Article 6.  Sale of Current Inventory

The parties agree that with respect to the sale of any of the inventory transferred to HS
hereunder pursuant to Article 2 hereof, any sums actually paid by Selim in respect of
such inventory for customs, transportation, storage, warehousing or other similar
charges shall be credited against the Selim Payable upon receipt of the sales price from
customers.

Article 7.  Other Secured Property

Selim agrees that any and all assets owned by or controlled by Selim shall be offered to
HS to secure the Selim Payable hereunder and the parties shall jointly agree on the
disposition, sale or continued maintenance of such assets by Selim.

Article 8.  Remedies

The execution of this agreement by either of the parties hereto shall not be deemed a
waiver of any rights or remedies that either party make exercise pursuant to the
previous agreements between the parties, provided, however, that in the event Selim
performs all of its obligations hereunder and there are no material breaches of such

obligations, HS agrees that it will not exercise any rights or remedies available to HS pursuant to such agreements to include the filing of any civil or criminal complaints against Selim. Further, any attachments or exercise of any remedies implemented by HS pursuant to such agreements which were taken or executed prior to the date hereof shall be released by HS.

Article 9.  Governing Law

This Joint Sales Agreement shall be governed by the laws of the State of New York.

In WITNESS HEREOF, the parties have caused their legally authorized representatives to execute this agreement as of the day and year first written above.

Hwaseung Networks America, Corp.


_____
Name:
Title:


Selim Textile, Inc.


_____
Name:
Title:

Selim America, Inc.


_____
Name:
Title:


_____
June Yong Kim

**EXHIBIT G**

**10 CIV 6328** RAKOFF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HWASEUNG NETWORKS AMERICA, CORP.
Plaintiff,

- against –

SELIM TEXTILE, INC., a New York Corporation;
SELIM AMERICA, INC., a New York Corporation;
JUNE YONG KIM; KEON HO LEE; KEYSTONE
TEXTILES, INC. a California Corporation; GLOBIZ
CLOTHING USA, INC., a California Corporation;
ABC COMPANIES (fictitious names of corporate
affiliates of defendants Selim Textiles, Inc., Selim
America Inc., Keystone Textiles, Inc. and Globiz
Clothing USA, Inc. whose identities are presently
unknown); XYZ COMPANIES 1 through 50, inclusive,
(fictitious names of companies in which defendants
June Yong Kim and Keon Ho Lee has an interest,
whose identities are presently unknown); JANE and
JOHN DOES 1 through 50, inclusive (fictitious
individuals affiliated with the named defendants),

Defendant(s)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

_____ Civ. _____ ( )

**ORDER TO SHOW CAUSE
FOR PRELIMINARY
INJUNCTION, TEMPORARY
RESTRAINING ORDER AND
FREEZE ASSETS**

Upon the Complaint herein and Exhibits thereto, Plaintiff's *Ex Parte* Application for a

Temporary Restraining Order, Order for Expedited Discovery, and Order to Show Cause for a

Preliminary Injunction, the annexed Affidavit of Yong Dong Cho, sworn to the 20th day of

August, 2010, the Exhibits referenced therein, and upon the accompanying Memorandum of Law,

Plaintiff Hwaseung Networks America, Corp., having moved *ex* parte against Defendants for the

above-referenced relief pursuant to Federal Rule of Civil Procedure 65; and the Court having

reviewed all of the papers referenced above, the Court hereby finds:

1

1. Plaintiff is likely to succeed in showing that Defendants have engaged in RICO violations and further committed several counts of breach of contract, fraud, fraudulent misrepresentation, fraudulent conveyance, breach of implied covenant of good faith, conversion, unjust enrichment and civil conspiracy.

2. Plaintiff will likely suffer immediate and irreparable injury to Plaintiff unless Defendants' assets are enjoined from dissipating the assets prior to the resolution of the alleged matters.

THEREFORE, IT IS HEREBY ORDERED:

## ORDER TO SHOW CAUSE

IT IS HEREBY ORDERED, that the above named defendant show cause before a motion term of this Court, at Room M-B United States Courthouse, 500 Pearl Street, in the City, County and State of New York, on _9/1/10_ _,2010_, at _2:30_ o'clock in the afternoon thereof, or as soon thereafter as counsel may be heard, why an order granting Plaintiff an order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure (i) enjoining the Defendants, their customers, agents, officers, subsidiaries, assigns, and banking institutions during the pendency of this action, from alienating, dissipating, paying over or assigning any assets of June Yong Kim, Selim Textile, Inc. and Selim America, Inc. or its subsidiaries or related companies (including without limitation, Chase Bank accounts held by June Yong Kim (unknown); Bank of America accounts held by June Yong Kim (unknown), Selim Textile, Inc.(#483001258517) and Selim America, Inc. (000347924694)), except for payment to Plaintiff until further order of this Court or until Defendants pay Plaintiff the sum of $59,000,000.00, at which time this Order is dissolved; (ii) enjoining the Defendants, during the pendency of this action from directly or indirectly opening or causing to be opened any safe

2

deposit boxes titled in the name of or subject to access by any or all of the Defendants; and (iii)

enjoining the Defendants from directly or indirectly destroying, mutilating, concealing, altering

or disposing of records of any relating in any way to the Defendants' business dealings; and it is

further

ORDERED that, sufficient reason having been shown therefor, pending the hearing of

Plaintiff's application for a preliminary injunction, pursuant to Rule 65, Fed. R. Civ. P. (i)

enjoining the Defendants, their customers, agents, officers, subsidiaries, assigns, and banking

institutions during the pendency of this action, from alienating, dissipating, paying over or

assigning any assets of June Yong Kim, Selim Textile, Inc. and Selim America, Inc. or its

subsidiaries or related companies (including without limitation, Chase Bank accounts held by

June Yong Kim (unknown); Bank of America accounts held by June Yong Kim (unknown),

Selim Textile, Inc.(#483001258517) and Selim America, Inc. (000347924694)), except for

payment to Plaintiff until further order of this Court or until Defendants pay Plaintiff the sum of

$59,000,000.00, at which time this Order is dissolved; (ii) enjoining the Defendants, during the

pendency of this action from directly or indirectly opening or causing to be opened any safe

deposit boxes titled in the name of or subject to access by any or all of the Defendants; and (iii)

enjoining the Defendants from directly or indirectly destroying, mutilating, concealing, altering

or disposing of records of any relating in any way to the Defendants' business dealings; and it is

further

ORDERED that security in the amount of $ _10,000.__ be posted by the Plaintiff

prior to _____August____ 30 __, 2010 at 3:00 o'clock in the a-fternoon of that

day; and it is further

3

ORDERED that personal service of a copy of this order and annexed affidavit upon the

defendant or his counsel on or before _5:00_ o'clock in the afternoon, _August 25,_

2010, shall be deemed good and sufficient service thereof.

DATED: New York, New York

ISSUED: 8/24/10 — 2:25PM

United States District Judge

4

# EXHIBIT H

**HWASEUNG NETWORKS
AMERICA CORP.**

**485 SEVENTH AVENUE
NEW YORK, NY 10018
TEL: 212-868-8188
FAX: 212-868-8288**

**VIA HAND**

**August 22, 2010**

**KEYSTONE TEXTILE, INC.**
**2541 South Alameda Street**
**Los Angeles, CA 90058**

### Re: ASSIGNMENT OF ACCOUNTS RECEIVABLE
Notice of Default by Selim Textile, Inc. ("Selim")

Dear Sir or Madam:

You are hereby notified that Selim is in default pursuant to Revolving Sales Credit Agreement and Promissory Note ("Agreements") as a result of a material breach of the Agreements. We hereby intend to exercise and enforce all rights and powers set forth in Assignment of Accounts Receivable executed by the parties on January 1, 2010, a copy of which is attached hereto.

Henceforth, Hwaseung will undertake the responsibility of administering and managing your existing account with Selim ("Account") until you are notified otherwise. You are directed to forward all payments for the Account directly to Hwaseung at the above address or send wires to the following Hwaseung account:

> **BANK: CITIBANK N.A BR NO. 415**
> **BANK ADDRESS: 22 WEST 32ND ST NY, NY 10001**
> **SWIFT CODE: CITIUS3N**
> **ABA NUMBER: 021000089**
> **ACCOUNT NUMBER: 9971744257**

You are hereby strictly prohibited from engaging in any further business activities with Selim for the goods sold by Hwaseung, effective immediately. Hwaseung hereby agrees to indemnify and hold harmless [Company] against any and all liability, claims, suits, losses, costs and legal fees caused by, arising out of, or resulting from this Assignment.

We regret any inconvenience this matter may have caused your company and we thank you for your anticipated cooperation.

Very truly yours,

By: /s/ Wan Man Lee
    Wan Man Lee, President
    Hwaseung Networks America Corp.

Acknowledged and Agreed by:


By: _____

cc: Selim Textile, Inc.