1 | Mark S. Horoupian (CA Bar No. 175373)
    mhoroupian@sulmeyerlaw.com
2 | Avi E. Muhtar (CA Bar No. 260728)
    amuhtar@sulmeyerlaw.com
3 | **Sulmeyer**Kupetz
    A Professional Corporation
4 | 333 South Hope Street, Thirty-Fifth Floor
    Los Angeles, California  90071-1406
5 | Telephone: 213.626.2311
    Facsimile: 213.629.4520
6 |
7 | Attorneys for Howard M. Ehrenberg,
    Chapter 11 Trustee

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **LOS ANGELES DIVISION**

11 | In re                                    CASE NO. 2:10-BK-45503-RN

12 | SELIM AMERICA, INC, a New York           Chapter 11
    corporation,

13 |        Debtor.                           **MOTION BY CHAPTER 11 TRUSTEE
                                              FOR ORDER APPROVING**
14 |                                          **COMPROMISE WITH PRIME BUSINESS
                                              CREDIT, INC; MEMORANDUM OF**
15 |                                          **POINTS AND AUTHORITIES AND
                                              DECLARATION OF HOWARD M.**
16 |                                          **EHRENBERG IN SUPPORT THEREOF**

17 |                                          Date:   November 17, 2010
                                              Time:   9:00 a.m.
18 |                                          Place:  255 East Temple Street
                                                      Courtroom 1654
19 |                                                  Los Angeles, CA 90012

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

AMUHTAR\ 686702.1

# <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................3

I.      INTRODUCTION ..............................................................................................3

II.     FACTS ...........................................................................................................3

     A.     Background ............................................................................................3

     B.     PBC's Relationship With the Debtors ...................................................4

          1.     The Factoring and Credit Guaranty Agreements ...............................4

          2.     PBC's Claim Against the Estate ........................................................5

     C.     The Settlement Agreement ...................................................................6

          1.     Reduction of Secured Claim and Preservation of the Credit Guarantees ..........................................................................................6

          2.     Continuation and Expansion of Collection Services .........................6

               a.     Payment of the Allowed Secured Claim and PBC's Post-Petition Collection Activities..........................................7

               b.     Neither Substantive Consolidation of the Debtors' Estate Nor a Sale or Assignment of the Accounts Receivable Shall Alter the Terms of the Settlement Agreement ..........................................................................8

III.    DISCUSSION...................................................................................................9

IV.   CONCLUSION ...............................................................................................12

DECLARATION OF HOWARD M. EHRENBERG ........................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Cosoff v. Rodman (In re W.T. Grant Co.)
    699 F.2d 599 (2nd Cir. 1983), cert. denied, 464 U.S. 822, 104 S. Ct. 88
    (1985) ............................................................................................................... 9

In re Bell & Beckwith
    93 B.R. at 569 (Bankr. N.D. Ohio 1988)................................................................ 9

In re Carson
    82 B.R. 847 (Bankr. S.D. Ohio 1987) ................................................................. 10

In re Continental Investment Corp.
    637 F.2d 8 (1st Cir. 1980) ................................................................................... 9

In re MGS Marketing,
    11 B.R. 264 (Bankr. 9th Cir. 1990) ...................................................................... 9

In re Morrison
    69 B.R. 586 (Bankr. E.D. Pa. 1987) ................................................................... 10

Martin v. Robinson (In re A&C Properties
    784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854, 107 S. Ct.
    189 (1986).......................................................................................................... 9

Port O'Call Investment Co. v. Blair (In re Blair)
    538 F.2d 849 (9th Cir. 1976) .............................................................................. 10

Protective Committee for Independent Stockholders of TMT Trailer Fairy Inc. v.
    Anderson
    390 U.S. 414 88 S. Ct. 1158 (1968) ..................................................................... 9

St. Paul Fire & Marine Ins. Co. v. Vaughn
    779 F.2d 1003 (4th Cir. 1985) .............................................................................. 9

## STATUTES

Fed. R. Bankr. Proc.
    Rule 9019(a) .................................................................................................... 1, 9

AMUHTAR\ 686702.1

1    Howard M. Ehrenberg (the "Trustee"), they duly appointed and acting Chapter 11

2    Trustee in the above-captioned case of Selim America, Inc. ("Selim America" or the

3    "Debtor"), hereby moves this Court for an Order approving a compromise and settlement

4    of claims by and among, on the one hand, Prime Business Credit, Inc. ("PBC") and, on

5    the other hand, the Trustee and the Debtor's bankruptcy estate (the "Estate", and

6    together with PBC, the "Parties").  Additionally, and as part of the Compromise, the

7    Trustee proposes to allow PBC to continue to collect the Debtor's outstanding accounts

8    receivable as set forth herein.

9    The settlement agreement between the Parties (the "Settlement Agreement"), a

10    true and correct copy of which is attached to the accompanying the Declaration of

11    Howard M. Ehrenberg (the "Ehrenberg Declaration") hereto as Exhibit 1, will reduce

12    PBC's secured claim against the Estate by $30,000, ensure that certain existing credit

13    guarantees provided to the Debtor by PBC will remain in full force and effect (thereby

14    ensuring a substantial recovery for the benefit of the Estate), and will allow PBC to

15    continue to seek collection of the Debtor's accounts receivables for the benefit of the

16    Estate.

17    This Motion is brought pursuant to Rule 9019(a) of the Federal Rules of

18    Bankruptcy Procedure and is based upon this Motion, the accompanying memorandum

19    of points and authorities, the Ehrenberg Declaration, the record in this case and any other

20    further argument or evidence that may be presented to the Court before or at the hearing

21    on the Motion.  In the exercise of the Trustee's business judgment, the Trustee believes

22    that the proposed settlement is fair, reasonable and in the best interests of the Estate.

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

1

1     **WHEREFORE**, the Trustee respectfully requests that this Court enter an Order:

2   (1) granting this Motion; (2) approving the Settlement Agreement; (3) authorizing the

3   Trustee to execute the Settlement Agreement and take any and all actions necessary to

4   effectuate the terms of the Settlement Agreement; and (4) providing such other and

5   further relief as is proper.

6

7   DATED: October 25, 2010              Respectfully submitted,

8                                        **Sulmeyer**Kupetz
                                         A Professional Corporation
9

10                                       By:   */s/Mark S. Horoupian*

11                                             Mark S. Horoupian
                                               Attorneys for Howard M. Ehrenberg,
12                                             Chapter 11 Trustee

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMUHTAR\ 686702.1

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

The Trustee hereby submits the following memorandum of points and authorities in support of the Motion.

### I.

### INTRODUCTION

The Motion seeks approval of an agreement that will reduce PBC's secured claims against the Estate by $30,000 and will ensure that certain existing credit guarantees provided to the Debtor by PBC will remain in full force and effect, thereby ensuring a substantial recovery for the benefit of the Estate.  In addition, by authorizing PBC to continue its collections of the Debtor's accounts receivables, the Agreement provides an efficient and expeditious manner of realizing value for the Debtor's accounts.

The Trustee believes that the Settlement Agreement is in the best interests of the Estate.  Accordingly, this Court should grant the Motion and approve the Settlement Agreement.

### II.

### FACTS

**A.    Background**

On August 23, 2010 (the "Petition Date") Selim America and Textile, each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

On September 17, 2010, this Court entered its Order [Docket No. 55] appointing Howard M. Ehrenberg as Chapter 11 Trustee for the Debtor's estate.

On October 8, 2010, the Trustee filed his motion [Docket No. 68] (the "Substantive Consolidation Motion") for an order substantively consolidating the estates of Selim Textile, Inc., case no. 2:10-bk-45505-RN,  ("Textile", and together with Selim America, the "Debtors") and Selim America, Inc.

---

[1] Terms not defined herein shall have the same meaning ascribed to them in the foregoing motion.

1    The Debtors' business entailed importing a variety of textile goods (e.g. yarns and

2    fabrics) from foreign suppliers (generally on credit), and re-selling those goods within the

3    United States.  The Debtors' sale of the goods to customers would generate accounts

4    receivables (the "Accounts Receivable").

5    **B.    PBC's Relationship With the Debtors**

6        1.    The Factoring and Credit Guaranty Agreements

7        On March 17, 2010, PBC and the Debtor entered into that certain Factoring

8    Agreement (the "Factoring Agreement"), a true and correct copy of which is attached to

9    the Ehrenberg Declaration as Exhibit 2.  The Factoring Agreement generally authorized

10    PBC to seek collection of certain accounts receivable that were factored by PBC (the

11    "Factored Accounts").  Amounts collected by PBC on the Factored Accounts would be

12    credited back to the Debtors, less certain fees and commissions due to PBC.

13        Section 1.3 of the Factoring agreement further provided that PBC would assume

14    the credit risk on certain accounts receivable assigned to it under the Factoring

15    Agreement, thereby guaranteeing the payment due on those accounts to the Debtor (the

16    "Credit Guarantees") under certain circumstances such as insolvency of the account

17    debtor.

18        Additionally, the Factoring Agreement granted PBC a security interest in all of the

19    Debtor's personal property, including but not limited to, accounts, inventory, equipment,

20    furniture and fixtures and general intangibles (the "Collateral").

21        On April 28, 2010, PBC and the Debtor entered into that certain Letter of Credit

22    and Guaranty Agreement (the "Letter of Credit Agreement"), a true and correct copy of

23    which is attached to the Ehrenberg Declaration as Exhibit 3.  The Credit Guaranty

24    Agreement generally provided that PBC would finance the Debtor's purchase of

25    merchandise by establishing letters of credit in favor of the sellers of such merchandise

26    and by issuing a guaranty of payment in favor of any such sellers.  PBC obtained a

27    purchase money security interest in all inventory purchased with the aid of its financing.

28

4

1   The Credit Guaranty Agreement further secured all obligations due to PBC by granting

2   PBC a continuing security interest in all the Collateral.

3        On March 17, 2010, PBC perfected its security interest in the Collateral by filing a

4   UCC Filing Statement with the Office of the Secretary of State for the State of New York,

5   bearing file stamp number 2010-03178087066, a true and correct copy of which is

6   attached to the Ehrenberg Declaration as <u>Exhibit 4</u>.

7            2.    <u>PBC's Claim Against the Estate</u>

8        In connection with the Factoring Agreement and with the Letter of Credit

9   Agreement, as of October 8, 2010, PBC asserts a  secured claim against the Estate in

10  the amount of $436,308.92 (the "<u>Claim Amount</u>").  The Claim Amount is broken down as

11  follows:

12          (i)      $112,351.00      Commissions Shortfall (as defined below)

13          (ii)     $13,051.89       Pre-petition fees under the Factoring Agreement;

14          (iii)    $265,614.55      Letters of Credit issued under the Credit Guaranty

15                                    Agreement

16          (iv)     $41,434.48       Attorney's Fees

17          (v)      $3,857.00        Interest at $133 *per diem* pursuant to the Credit

18                                    Guaranty Agreement

19       The Factoring Agreement provided that PBC was entitled to a minimum annual

20  commission of $150,000 (the "<u>Minimum Annual Commission</u>").  If, as a result of PBC's

21  collection activities, PBC's earned commissions amounted to less than $150,000, the

22  Debtor was obligated to make up the difference by remitting payment to PBC.  For the 12

23  month period following March 17, 2010 (the Factoring Agreement's effective date), PBC's

24  collections activities resulted in earned commissions of $37,649 (the "<u>Earned

25  Commissions</u>").  Subtracting the Earned Commissions from the Minimum Annual

26  Commission results in a contractual obligation to PBC by the Debtor in the amount of

27  $112,351 (the "<u>Commissions Shortfall</u>").

28

**C.** **The Settlement Agreement**

     1.    Reduction of Secured Claim and Preservation of the Credit Guarantees

PBC and the Trustee disputed the proper calculation of PBC's allowed claims against the Estate.  The Parties reached a consensual resolution whereby PBC agreed to reduce the amount of its secured claims against the Debtors' estates by $30,0000.

Accordingly, the Parties agreed that as of October 8, 2010, PBC's existing outstanding indebtedness against the Estate (the "Allowed Secured Claim") is the amount of not less than $406,308.92, plus (1) ongoing interest accrual of $133.00 *per diem* due and owing under the Letter of Credit Agreement; and (2) attorneys' fees and costs incurred commencing October 9, 2010, as provided for under the Factoring Agreement and the Letter of Credit Agreement.[2]

The Parties further agreed that the Credit Guarantees provided by PBC, which guarantee the payment of a certain portion of the Accounts Receivable for the benefit of the Debtor under certain circumstances, shall remain in full force and effect.

     2.    Continuation and Expansion of Collection Services

Pursuant to the Factoring Agreement, PBC was authorized to collect all of the Factored Accounts.  PBC alleges that the Factored Accounts are actually PBC's property, and not subject to the automatic stay.  Specifically, PBC was tasked to pursue the collection of the Factored  Accounts.  PBC would allocate a portion of the amounts it collected for the payments of its fees and commissions.  PBC ceased all factoring and collection under the Factoring Agreement as of the Petition Date.  The face value of  all of the outstanding Accounts Receivable, as of September 16, 2010 is $10,919,303.30 (this amount includes amounts of approximately $2.5 million due and owing by June Kim, the Debtor's principal (the "June Kim Accounts").

---

[2] The Settlement Agreement provides that all attorney's fees are subject to the Trustee's review.  To the extent that PBC and the Trustee are unable to reach an agreement with regard to any disputed attorney's fees, the Parties shall request a hearing with this Court seeking a final resolution of the allowable fees.

AMUHTAR\ 686702.1

1   As a result of its pre-petition factoring and collection activities, PBC has become

2   thoroughly familiar with the Accounts Receivable and the complexities involved in their

3   collection.  The Trustee believes that PBC is best suited to continue the collection of the

4   Accounts Receivable for the benefit of the Debtors' estates.  Accordingly, the Settlement

5   Agreement provides that PBC will be authorized to continue the collection of the Factored

6   Accounts, which it arguably has the right to do even absent an agreement.   Further, in

7   light of PBC's familiarity with the Debtor's business, its customers, and the textile industry

8   as a whole, the Settlement Agreement proposes to expand PBC's authority to collect

9   those accounts that were not factored by PBC.  The Trustee submits that allowing PBC to

10   collect on those accounts is further justified by the fact that having two separate agencies

11   collecting on different accounts owed by the same customers would be confusing to

12   customers, and may cause a deterioration in the value of the accounts.

13               a.    Payment of the Allowed Secured Claim and PBC's Post-

14                     Petition Collection Activities

15   The Settlement Agreement provides that collection proceeds shall inure first to the

16   payment and satisfaction of the Allowed Secured Claim.  In other words, PBC shall be

17   allowed to offset the full amount of its Allowed Secured Claim against any and all

18   amounts collected from the Accounts Receivable.  PBC shall retain any and all of its

19   existing priority lien rights against the assets of the Debtor until the full satisfaction of the

20   Allowed Secured Claim.  The net proceeds from collection of the Accounts Receivable,

21   after payment of the Allowed Secured Claim and all other amounts owed to PBC (as

22   further described below), will be remitted to the Estate.

23   The Settlement Agreement further provides that for all amounts collected beyond

24   those needed to satisfy the Allowed Secured Claim, PBC will earn a collection

25   contingency fee ranging from 10% to 20% (depending on the length of time expended on

26   collection of a particular account) of said amounts.  On September 30, 2010 (the "First

27   Demand Date"), the Trustee sent his first collection demand letter to obligors of the

28   Accounts Receivable.  The Settlement Agreement specifically provides that, PBC shall

7

1  receive a collection contingency fee of 10% of amounts collected from accounts

2  uncollected from the First Demand Date through and including 30 days thereafter.  PBC

3  shall receive a collection contingency fee of 15% of amounts collected from accounts

4  uncollected from 31 days after the First Demand Date through and including 90 days

5  thereafter.  Finally, PBC shall receive a collection contingency fee of 20% of amounts

6  collected from accounts uncollected from 91 days after the First Demand Date through all

7  dates thereafter.

8          Pursuant to the Settlement Agreement, PBC will also have the authority to reduce

9  the amount due and owing for an account by not more than fifteen percent of the face

10 value of the account.  Such reductions will be made in PBC's sole discretion to assist it

11 with its collection efforts.  In the event that PBC wishes to allow a reduction in an amount

12 greater than fifteen percent, PBC shall be required to obtain the Trustee's written

13 consent, which consent shall not be unreasonably withheld.  In the event no agreement

14 between the Trustee and PBC is reached, PBC will assign the account back to the

15 Trustee and no commission or fees will be due to PBC on account of any amounts

16 recovered by the Trustee.

17         Finally, the Settlement Agreement carves out from PBC's post-petition collection

18 efforts the account owed by Pacific Sourcing Group ("PSG") for the amount of $112,000.

19 PSG previously remitted a check for the full payment of their account but has since

20 stopped payment on the check.  PSG has represented to the Trustee that it will issue a

21 replacement check.  Accordingly, PBC shall not be allowed any commission or fee on

22 account of monies collected from PSG.

23                          b.    Neither Substantive Consolidation of the Debtors' Estate Nor

24                                a Sale or Assignment of the Accounts Receivable Shall Alter

25                                the Terms of the Settlement Agreement

26         The Trustee's Substantive Consolidation Motion is currently pending before this

27 Court.  Further, the Trustee is engaged in settlement discussions with one of the Debtors'

28

AMUHTAR\ 686702.1

1    creditors, Hwaseung Networks America, Corp. ("Hwaseung"), whereby the Trustee may

2    seek to sell assign or sell the Accounts Receivable to Hwaseung.

3        The Settlement Agreement provides that PBC's rights to pursue collection of the

4    Accounts Receivable and receive compensation for such collection efforts shall in no way

5    be altered or modified by the substantive consolidation of the Debtors' estate nor by any

6    sale or assignment of the Accounts Receivables to a third party, including, but not limited

7    to, Hwaseung.

8                                        III.

9                                  **DISCUSSION**

10   **A.      Standard for Approval of a Compromise**

11          Rule 9019(a) of the Federal Rules of Bankruptcy Procedure provides:

12          **(a) Compromise.**  On motion by the trustee and after notice
             and a hearing, the court may approve a compromise or
13           settlement.

14       In evaluating whether to approve a compromise, the Court must consider: 1) the

15   probability of success in the litigation; 2) the complexity of the litigation involved; 3) the

16   expense, inconvenience and delay necessarily attending to it; and 4) the paramount

17   interests of the creditors.  See Martin v. Robinson (In re A&C Properties, 784 F.2d 1377,

18   1381 (9th Cir. 1986), cert. denied, 479 U.S. 854, 107 S. Ct. 189 (1986); see also,

19   Protective Committee for Independent Stockholders of TMT Trailer Fairy Inc. v.

20   Anderson, 390 U.S. 414, 424, 88 S. Ct. 1158 (1968); In re MGS Marketing, 11 B.R. 264

21   (Bankr. 9th Cir. 1990).  Approval of a proposed compromise turns on whether the

22   compromise is in the "best interests of the estate."  St. Paul Fire & Marine Ins. Co. v.

23   Vaughn, 779 F.2d 1003, 1010 (4th Cir. 1985); In re Continental Investment Corp., 637

24   F.2d 8, 11 (1st Cir. 1980).

25       A compromise should be approved unless it falls below the lowest point in the

26   range of reasonableness.  See In re Bell & Beckwith, 93 B.R. at 569, 574 (Bankr. N.D.

27   Ohio 1988); Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2nd Cir. 1983),

28   cert. denied, 464 U.S. 822, 104 S. Ct. 88 (1985).  "In passing upon the proposed

                                        9

1  settlement, the court must consider the principle that 'law favors compromise.'" In re

2  Carson, 82 B.R. 847, 853 (Bankr. S.D. Ohio 1987); Port O'Call Investment Co. v. Blair (In

3  re Blair), 538 F.2d 849, 851 (9th Cir. 1976).

4          Finally, the compromise approval process does not contemplate that a court will

5  substitute its business judgment for that of a trustee.  To the contrary, a settlement that

6  has been negotiated by a trustee -- the estate's representative -- is entitled to deference.

7  See In re Morrison, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987).

8  **B.      This Court Should Approve the Settlement Agreement**

9          A review of the A&C factors set forth above demonstrates that the Settlement

10  Agreement is an appropriate and reasonable exercise of the Trustee's business judgment

11  and its approval is in the best interests of the Estate.

12         The Trustee has reviewed the Estate's liabilities to PBC in connection with the

13  Factoring Agreement and with the Letter of Credit Agreement.  The Trustee disputed

14  certain commissions asserted by PBC against the Estate.  The Parties reached a

15  consensual resolution of their disputes whereby PBC agreed to a reduction of their

16  Allowed Secured Claim by $30,000.00.  The Trustee believes that it would be unlikely

17  that a formal objection to PBC's claims would succeed in reducing PBC's claims by an

18  amount greater than that provided in this Settlement Agreement, particularly after

19  factoring in the costs and expenses inherent in filing and litigating a formal objection .

20         By reaffirming the Credit Guarantees, the Settlement Agreement further ensures a

21  substantial recovery to the Debtors' estates.  As noted above, PBC assumes the credit

22  risk of certain of the Accounts Receivable, which pursuant to the Factoring Agreement

23  means that PBC would pay certain of those approved Accounts in situations where the

24  account debtor is financially unable to pay the account when due.  PBC has asserted that

25  as a result of certain breaches under the Factoring Agreement it may be able to withdraw

26  such Credit Guarantees.  The Settlement Guarantee avoids the costs and expenses that

27  would be associated with litigating issues related to the Factoring Agreement and the

28  Credit Guarantees and ensures a recovery for the Debtors' estates.

1    The Settlement Agreement provides for the efficient and expeditious collection of

2    amounts due to the Debtors' estates from the Accounts Receivable.  If the Settlement

3    Agreement is not approved it is likely that the Trustee would have to expend great effort

4    in sorting through the Debtors' books and records in an effort to collect such debts.

5    Moreover, the Trustee would likely be forced to seek the services of a third party

6    collection agent to collect on such accounts.  Such third party agent would essentially

7    begin the collection efforts from scratch and would lack the experience and knowledge

8    that PBC obtained in its pre-petition collection activities.  The Trustee believes that

9    allowing PBC to continue its collection efforts would ensure the most cost efficient

10    collection and would maximize distributions to creditors.

11    The Trustee believes that the paramount interests of creditors in this case is to

12    maximize distributions to unsecured creditors with a minimum amount of administrative

13    fees.  Approval of the Settlement will achieve this goal.  On the other hand, without the

14    Settlement Agreement and by litigating the claims, the Estate will risk a guaranteed

15    recovery  and would be forced to expend significant administrative cost in objecting to

16    PBC's claims and in collecting on the Accounts Receivable.  The Settlement Agreement

17    will resolve a large secured claim against the Estate and generate a substantial recovery

18    for the Estate in a quick, efficient and favorable manner.

19    Furthermore, based on PBC's experience with collection matters and based on

20    PBC's familiarity with the Debtor's Accounts Receivable, the Trustee believes that PBC is

21    an expert in collection matters, and is well qualified to provide the services required by

22    the Trustee.  The retention of PBC will allow for the efficient and expeditious collection of

23    the Accounts Receivable for the benefit of the Estate until the time that the Trustee sells

24    the Accounts Receivable to Hwaseung, or a successful overbidder.  It would be disruptive

25    and costly to the Estate if the Trustee were required to replace PBC at this time since

26    retaining a new collections agent would result in additional costs and unnecessary

27    duplication of services, as the new agency becomes educated with regard to the

28    Accounts Receivable.

11

1    The Trustee believes that the commission rates and fees provided to PBC in the

2  Settlement Agreement are fair and reasonable, especially when viewed in light of the

3  compromise reached.  The Trustee believes that the rates and fees provided are in line

4  with industry standards.

5                                                                **IV.**

6                                                        **<u>CONCLUSION</u>**

7    Based on the foregoing, in the exercise of his business judgment, the Trustee

8  believes that the Settlement Agreement is fair, reasonable and in the best interests of the

9  Estate.

10    The Trustee respectfully requests that this Court enter an Order (1) granting this

11  Motion and approving the Settlement Agreement, (2) authorizing the Trustee to execute

12  the Settlement Agreement and to take any and all actions necessary to effectuate the

13  terms of the Settlement Agreement, (3) authorizing PBC to pursue collection of the

14  Accounts Receivable pursuant to the terms contained in the Settlement Agreement, and

15  (4) providing such other and further relief as is proper.

16

17  DATED: October 25, 2010                    Respectfully submitted,

18                                                                **Sulmeyer**Kupetz
                                                                  A Professional Corporation
19

20

21                                                                By:    */s/Mark S. Horoupian*
                                                                  _____
22                                                                        Mark S. Horoupian
                                                                  Attorneys for Howard M. Ehrenberg,
23                                                                  Chapter 11 Trustee

24

25

26

27

28

AMUHTAR\ 686702.1

1          <u>**DECLARATION OF HOWARD M. EHRENBERG**</u>[3]

2          I, Howard M. Ehrenberg, declare:

3          1.          I am the duly appointed, qualified and acting chapter 11 trustee for the

4    estate of Selim America, Inc.  I make this Declaration in support of the motion, pursuant

5    to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, for entry of an Order

6    approving a compromise and settlement of claims by and among, on the one hand, Prime

7    Business Credit, Inc. ("<u>PBC</u>") and, on the other hand, myself and the Debtor's bankruptcy

8    estate (the "<u>Estate</u>", and together with PBC, the "<u>Parties</u>").  Additionally, and as part of

9    the Compromise, I propose to allow PBC to continue its efforts to collect  the Debtor's

10   outstanding accounts receivable authorized under the Factoring Agreement, and to

11   expand the scope of its collection services to cover non-factored receivables.  Each of

12   the facts contained in this declaration are based on my personal knowledge, and if called

13   as a witness I could and would competently testify thereto.

14          2.          A true and correct copy of the Settlement Agreement is attached hereto as

15   <u>Exhibit 1</u>.

16          3.          The Motion seeks approval of an agreement that will reduce PBC's secured

17   claims against the Estate by $30,000 and will ensure that certain existing credit

18   guarantees provided to the Debtor by PBC will remain in full force and effect, thereby

19   ensuring a substantial recovery for the benefit of the Estate.  In addition, by authorizing

20   PBC to continue to pursue collection of the Debtor's accounts receivables, the

21   Agreement provides an efficient and expeditious manner for collection the Estate's

22   assets.

23          4.          I believe that the Settlement Agreement is in the best interests of the

24   Estate.

25          5.          On March 17, 2010, PBC and the Debtor entered into that certain Factoring

26   Agreement (the "<u>Factoring Agreement</u>"), a true and correct copy of which is attached

27   _____

[3] All terms not defined herein shall have the same meaning ascribed to them in the

28   Motion.

AMUHTAR\ 686702.1

1    hereto as <u>Exhibit 2</u>.  The Factoring Agreement generally authorized PBC to seek

2    collection of the Accounts Receivable that it had factored (the "Factored Accounts").

3    Indeed, with respect to the Factored Accounts, the Factoring Agreement provided that

4    the accounts were transferred to PBC as its property.  Amounts collected by PBC on the

5    Accounts Receivable would be credited back to the Debtors, less certain fees and

6    commissions due to PBC.

7          6.    Section 1.3 of the Factoring agreement further provided that PBC would

8    assume the credit risk on certain accounts receivable assigned to it under the Factoring

9    Agreement, thereby guaranteeing the payment due on those accounts to the Debtor (the

10    "<u>Credit Guarantees</u>").

11          7.    Additionally, the Factoring Agreement granted PBC a security interest in all

12    of the Debtor's personal property, including but not limited to, accounts, inventory,

13    equipment, furniture and fixtures and general intangibles (the "<u>Collateral</u>").

14          8.    On April 28, 2010, PBC and the Debtor entered into that certain Letter of

15    Credit and Guaranty Agreement (the "<u>Letter of Credit Agreement</u>"), a true and correct

16    copy of which is attached hereto as <u>Exhibit 3</u>.  The Credit Guaranty Agreement generally

17    provided that PBC would finance the Debtor's purchase of merchandise by establishing

18    letters of credit in favor of the sellers of such merchandise and by issuing a guaranty of

19    payment in favor of any such sellers.  PBC obtained a purchase money security interest

20    in all inventory purchased with the aid of its financing.  The Credit Guaranty Agreement

21    further secured all obligations due to PBC by granting PBC a continuing security interest

22    in all the Collateral.

23          9.    On March 17, 2010, PBC perfected its security interest in the Collateral by

24    filing a UCC Filing Statement with the Office of the Secretary of State for the State of

25    New York, bearing file stamp number 2010-03178087066, a true and correct copy of

26    which is attached hereto as <u>Exhibit 4</u>.

27

28

AMUHTAR\ 686702.1

10.    In connection with the Factoring Agreement and with the Credit Guaranty Agreement, as of October 8, 2010, PBC holds secured claims against the Estate in the amount of $436,308.92 (the "Claim Amount").  The Claim Amount is broken down as follows:

|       |              |                                                           |
|-------|--------------|-----------------------------------------------------------|
| (i)   | $112,351.00  | Commissions Shortfall (as defined below)                  |
| (ii)  | $13,051.89   | Pre-petition fees under the Factoring Agreement;          |
| (iii) | $265,614.55  | Letters of Credit issued under the Credit Guaranty Agreement |
| (iv)  | $41,434.48   | Attorney's Fees                                           |
| (v)   | $3,857.00    | Interest at $133 *per diem* pursuant to the Credit Guaranty Agreement |

11.    The Factoring Agreement provided that PBC was entitled to a minimum annual commission of $150,000 (the "Minimum Annual Commission").  If, as a result of PBC's collection activities, PBC's earned commissions amounted to less than $150,000, the Debtor was obligated to make up the difference by remitting payment to PBC.  For the 12 month period following the March 17, 2010 (the Factoring Agreement's effective date), PBC's collections activities resulted in earned commissions of $37,649 (the "Earned Commissions").  Subtracting the Earned Commissions from the Minimum Annual Commission results in a contractual obligation to PBC by the Debtor in the amount of $112,351 (the "Commissions Shortfall").

12.    PBC and I disputed the proper calculation of PBC's allowed claims against the Estate.  We reached a consensual resolution whereby PBC agreed to reduce the amount of its secured claims against the Debtors' estates by $30,0000.

13.    Accordingly, we agreed that as of October 8, 2010, PBC's existing outstanding indebtedness against the Estate (the "Allowed Secured Claim") is the amount of not less than $406,308.92, plus (1) ongoing interest accrual of $133.00 *per diem* due and owing under the Letter of Credit Agreement; and (2) attorneys' fees and

15

AMUHTAR\ 686702.1

1   costs incurred commencing October 9, 2010, as provided for under the Factoring

2   Agreement and the Letter of Credit Agreement.

3         14.    The Settlement Agreement provides that all attorney's fees are subject to

4   my review.  To the extent that PBC and I are unable to reach an agreement with regard

5   to any disputed attorney's fees, we shall request a hearing with this Court seeking a final

6   resolution of the allowable fees.

7         15.    We further agreed that the Credit Guarantees provided by PBC, which

8   guarantee the payment of a certain portion of the Accounts Receivable for the benefit of

9   the Debtor, under certain circumstances,, shall remain in full force and effect.

10        16.    Pursuant to the Factoring Agreement, PBC was authorized and empowered

11  to collect on Factored Accounts Receivable.  PBC would allocate a portion of the

12  amounts it collected for the payments of its fees and commissions.  PBC ceased all

13  factoring and collection under the Factoring Agreement as of the Petition Date, but

14  effective on the date of the signing of the Settlement Agreement, has resumed those

15  activities.  The face value of the outstanding Accounts Receivable, as of September 16,

16  2010 is $10,919,303.30 (this amount includes amounts due and owing by June Kim, the

17  Debtor's principal).  PBC will not be authorized to collect amounts owed by Mr. Kim.

18        17.    As a result of its pre-petition factoring and collection activities, PBC has

19  become thoroughly familiar with the Accounts Receivable and the complexities involved

20  in their collection.  I believe that PBC is best suited to continue the collection of the

21  Accounts Receivable for the benefit of the Debtors' estates.  Accordingly, the Settlement

22  Agreement allows PBC to resume its collection of the Factored Accounts (which it

23  arguably had the right to day regardless of the agreement), and expands its collection

24  authority over accounts that were not factored.

25        18.    The Settlement Agreement provides that collection proceeds shall inure first

26  to the payment and satisfaction of the Allowed Secured Claim.  In other words, PBC shall

27  be allowed to offset the full amount of its Allowed Secured Claim against any and all

28  amounts collected from the Accounts Receivable.  PBC shall retain any and all of its

1    existing priority lien rights against the assets of the Debtor until the full satisfaction of the

2    Allowed Secured Claim.  The net proceeds from collection of the Accounts Receivable,

3    after payment of the Allowed Secured Claim and all other amounts owed to PBC (as

4    further described below), will be remitted to the Estate.

5        19.    The Settlement Agreement further provides that for all amounts collected

6    beyond those needed to satisfy the Allowed Secured Claim, PBC will earn a collection

7    contingency fee ranging from 10% to 20% (depending on the length of time expended on

8    collection of a particular account) of said amounts.  On September 30, 2010 (the "First

9    Demand Date"), I sent my first collection demand letter to obligors of the Accounts

10   Receivable.  The Settlement Agreement specifically provides that, PBC shall receive a

11   collection contingency fee of 10% of amounts collected from accounts uncollected from

12   the First Demand Date through and including 30 days thereafter.  PBC shall receive a

13   collection contingency fee of 15% of amounts collected from accounts uncollected from

14   31 days after the First Demand Date through and including 90 days thereafter.  Finally,

15   PBC shall receive a collection contingency fee of 20% of amounts collected from

16   accounts uncollected from 91 days after the First Demand Date through all dates

17   thereafter.

18       20.    Pursuant to the Settlement Agreement, PBC will also have the authority to

19   reduce the amount due and owing for an account by not more than fifteen percent of the

20   face value of the account.  Such reductions will be made in PBC's sole discretion to

21   assist it with its collection efforts.  In the event that PBC wishes to allow a reduction in an

22   amount greater than fifteen percent, PBC shall be required to obtain my written consent,

23   which I will not unreasonably withhold.  In the event no agreement between myself and

24   PBC is reached, PBC will assign the account back to me and no commission or fees will

25   be due to PBC on account of any amounts recovered by me.

26       21.    Finally, the Settlement Agreement carves out from PBC's post-petition

27   collection efforts the account owed by Pacific Sourcing Group ("PSG") for the amount of

28   $112,000.  PSG previously remitted a check for the full payment of their account but has

17

1  since stopped payment on the check.  PSG has represented to me that it will issue a

2  replacement check.  Accordingly, PBC shall not be allowed any commission or fee on

3  account of monies collected from PSG.

4          22.    My Substantive Consolidation Motion is currently pending before this Court.

5  Further, I am engaged in settlement discussions with one of the Debtors' creditors,

6  Hwaseung Networks America, Corp. ("Hwaseung"), whereby I may seek to sell assign or

7  sell the Accounts Receivable.

8          23.    The Settlement Agreement provides that PBC's rights to pursue collection

9  of the Accounts Receivable and receive compensation for such collection efforts shall in

10  no way be altered or modified by the substantive consolidation of the Debtors' estate nor

11  by any sale or assignment of the Accounts Receivables to a third party, including, but not

12  limited to, Hwaseung.

13          24.    A review of the A&C factors set forth in the Motion above demonstrates that

14  the Settlement Agreement is an appropriate and reasonable exercise of my business

15  judgment and its approval is in the best interests of the Estate.

16          25.    I have reviewed the Estate's liabilities to PBC in connection with the

17  Factoring Agreement and with the Letter of Credit Agreement.  I disputed certain

18  commissions asserted by PBC against the Estate.  We reached a consensual resolution

19  of our disputes whereby PBC agreed to a reduction of its Allowed Secured Claim by

20  $30,000.00.  I believe that it would be unlikely that a formal objection to PBC's claims

21  would succeed in reducing PBC's claims by an amount greater than that provided in this

22  Settlement Agreement, particularly after factoring in the costs and expenses inherent in

23  filing and litigating a formal objection.

24          26.    By reaffirming the Credit Guarantees, the Settlement Agreement further

25  ensures a substantial recovery to the Debtors' estates.  As noted above, PBC has

26  guaranteed the payment of certain of the Accounts under certain circumstances, such as

27  the financial inability of the account debtor in question to pay the debt it owes to the

28  Debtor.  PBC has asserted that as a result of certain breaches under the Factoring

18

1   Agreement it may be able to withdraw such Credit Guarantees.  The Settlement

2   Guarantee avoids the costs and expenses that would be associated with litigating issues

3   related to the Factoring Agreement and the Credit Guarantees and ensures a recovery

4   for the Debtors' estates.

5   　　　　　27.　　　The Settlement Agreement provides for the efficient and expeditious

6   collection of amounts due to the Debtors' estates from the Accounts Receivable.  If the

7   Settlement Agreement is not approved it is likely that I would have to expend great effort

8   in sorting through the Debtors' books and records in an effort to collect such debts.

9   Moreover, I would likely be forced to seek the assistance of a third party collection agent

10  to collect on such accounts.  Such third party agent would essentially begin the collection

11  efforts from scratch and would lack the experience and knowledge that PBC obtained in

12  its pre-petition collection activities.  I believe that allowing PBC to continue its collection

13  efforts would ensure the most cost efficient collection and would maximize distributions to

14  creditors.

15  　　　　　28.　　　I believe that the paramount interests of creditors in this case is to maximize

16  distributions to unsecured creditors with a minimum amount of administrative fees.

17  Approval of the Settlement will achieve this goal.  On the other hand, without the

18  Settlement Agreement and by litigating the claims, the Estate will risk a guaranteed

19  recovery  and would be forced to expend significant administrative cost in objecting to

20  PBC's claims and in collecting on the Accounts Receivable.  The Settlement Agreement

21  will resolve a large secured claim against the Estate and generate a substantial recovery

22  for the Estate in a quick, efficient and favorable manner.

23  　　　　　29.　　　Based on PBC's experience with collection matters and based on PBC's

24  familiarity with the Debtor's Accounts Receivable, I believe that PBC is an expert in

25  collection matters, and is well qualified to provide the services I require.  Utilizing  PBC's

26  services will allow for the efficient and expeditious collection of the Accounts Receivable

27  for the benefit of the Estate.  It would be disruptive and costly to the Estate if I were

28  required to replace PBC at this time since retaining a new collections agent would result

AMUHTAR\ 686702.1

1   in additional costs and unnecessary duplication of services, as the new professional

2   becomes educated with regard to the Accounts Receivable.

3          30.    I believe that the commission rates and fees provided to PBC in the

4   Settlement Agreement are fair and reasonable.  I believe that the rates and fees provided

5   are in line with industry standards.

6         I declare under penalty of perjury under the laws of the United States of America

7   that the foregoing is true and correct.

8         Executed this 14th day of October 2010, at Los Angeles, California.

9

10                       */s/Howard M. Ehrenberg*

                            Howard M. Ehrenberg

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMUHTAR\ 686702.1